1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM SERVICES LLC, a Delaware
limited liability company,

                              Plaintiff,

        v.

JOEL SACKS, in his official capacity as the
Director of the Department of Labor &
Industries of the State of Washington, and

The Department of Labor & Industries of the
State of Washington,

                              Defendants.

No.

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## I.    INTRODUCTION

1.      The safety of Amazon's employees is critically important to Amazon – every

day and in every operation.  Amazon has a comprehensive, innovative, and robust workplace

health and safety program, staffed by thousands of workplace safety professionals and designed

to ensure that employees throughout Amazon's sort and fulfillment network are working safely

and that employee safety improves over time.

2.      In March 2022, despite Amazon's robust ergonomics program and a decrease in

injury rates between 2019 and 2022, the Washington State Department of Labor and Industries

Division of Occupational Safety and Health ("the Department") inspected a fulfillment facility

in Kent, Washington, known as "BFI4."  The Department then issued a Citation and Notice of

Assessment for Inspection No. 317965723 ("the Citation"), alleging several "serious willful"

violations, not of any specific workplace safety regulation but of the general duty of all employers to maintain a hazard-free workplace.  The Citation further alleged that Amazon had failed to address various alleged ergonomic hazards despite the absence of any specific ergonomic standards in either the Washington or federal occupational health and safety laws.

3.     Amazon challenged those allegations in state administrative proceedings, and that challenge remains pending, with an evidentiary hearing on the merits scheduled for early 2023.  Under the federal Occupational Safety and Health Act of 1970 and nearly all state workplace safety statutes, an employer is required to incur costs to abate – that is, remediate – an appealed violation only *after* the government has proved that the appealed violation occurred.  Under Washington law, however, that standard is reversed:  a company challenging a "serious" citation is required to abate the alleged hazards first, before the state has made any effort to satisfy its legal burden to prove that a violation has occurred and before the company has a meaningful opportunity to challenge the allegations.  Worse, though the state has yet to prove any violation, if the company does not abate to the state's satisfaction it can face fines of up to $7,000 per day, per violation.  In this case, Amazon could face fines of up to $70,000 per day.  Further, the state asserts that it can inspect other facilities operated by the employer, cite the employer for the same violations at other facilities, and use the previously issued but still unproven violations as evidence of "willfulness" to justify imposing even stiffer penalties and additional compliance costs.

4.     The only way for an employer to avoid the obligation to abate is to seek and obtain a stay of abatement.  But the stay of abatement timing and procedures in the Washington Industrial Safety and Health Act, Chapter 49.17 RCW ("WISHA"), do not afford a company sufficient time to obtain expert assistance (which is essential in complex disputes over ill-defined standards like those at issue here and where the state is itself relying on expert opinions), prohibit employers from subpoenaing relevant documents or cross-examining the state's witnesses, impose various procedural requirements, shift the state's burden of proof to the employer to disprove alleged hazards, and foreclose any appeal of a decision denying a

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

1    stay.  What is more, even when an employer challenges a citation, the Department insists that

2    employers sign an "Employer Certification of Abatement Form" that requires that employers

3    admit – under risk of criminal penalties – that "hazards" exist.  Thus, before the Department

4    proves any violation, employers are required to concede under oath and at risk of criminal

5    sanction that a violation occurred.  This highly unusual structure stacks the deck in the

6    Department's favor, leaving employers no meaningful opportunity to contest an abatement

7    requirement.

8           5.      By requiring employers like Amazon to incur significant financial and

9    operational burdens to abate alleged hazards *before* the Department has proven a violation of

10   any workplace safety rules and failing to provide a meaningful opportunity for employers to

11   contest the abatement requirement or appeal the denial of a request to stay abatement,

12   WISHA's stay of abatement procedures violate the due process clause of the Fourteenth

13   Amendment to the United States Constitution.

14          6.      Amazon, therefore, seeks a declaratory judgment that WISHA's stay of

15   abatement procedures violate the due process clause of the Fourteenth Amendment and an

16   injunction prohibiting the Department from requiring that Amazon implement costly,

17   burdensome, and potentially unnecessary abatement measures until the Department carries its

18   burden of proving that Amazon has, in fact, violated any safety or health regulation.

19                       II.      NATURE OF THE ACTION

20          7.      Amazon seeks a declaratory judgment, pursuant to 42 U.S.C. § 1983 and 28

21   U.S.C. §§ 2201 and 2202, that the stay of abatement procedures set out in RCW 49.17.140(4)-

22   (6), the implementing rules and regulations, and Department practices deprive Amazon and

23   other employers of substantive and procedural protections afforded by the due process clause of

24   the Fourteenth Amendment to the United States Constitution.

25          8.      Amazon seeks a preliminary injunction prohibiting enforcement of the WISHA

26   provisions requiring abatement of alleged hazards pending final resolution of this challenge and

27   then a permanent injunction prohibiting enforcement of WISHA's abatement mandates.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

### III.    PARTIES

9.      Amazon is a Delaware company with its principal place of business in Seattle, Washington.

10.     Defendant Department of Labor & Industries is an agency of the State of Washington with authority to enforce and implement the relevant parts of WISHA, RCW 49.17 *et seq*.

11.     Defendant Joel Sacks, acting under color of state law, is the Director of the Department of Labor & Industries of the State of Washington and is responsible for the administration of the relevant parts of WISHA.

### IV.    JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  This action arises under the due process clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C §§ 2201 and 2202.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Washington.

14.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division and Amazon has its principal place of business in this Division.

### V.    BACKGROUND FACTS

**A.    Amazon Protects Its Associates from Ergonomic Risks.**

**1.    Amazon Invests and Innovates to Protect Its Associates.**

15.     Amazon's ability to serve customers begins and ends with Amazon's employees, and Amazon is determined to be a leader in employee health and safety.  In 2021, Amazon invested $300 million in safety improvements, including capital improvements, new safety technology, vehicle safety controls, and engineering ergonomic solutions.  The same

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

year, Amazon launched a five-year, $12 million partnership with the National Safety Council, which was the largest corporate contribution in the organization's history.  This partnership focuses on the reduction of ergonomic injuries and in particular musculoskeletal disorder risks. *See* https://www.nsc.org/newsroom/amazon-and-nsc-create-first-of-its-kind-partnershi. Amazon's safety team also more than tripled in the past four years, from 2,400 safety professionals to more than 8,000, and the team is dedicated to using the science of safety to solve complex problems and establish new industry best practices.

16.     When Amazon invests in safety, it leverages its operational, engineering, and design expertise to get results.  Between 2019 and 2022, Amazon has made meaningful improvements in protecting the health and safety of its associates.  For example, Amazon's recordable incident rate at BFI4 (a rate that measures how often an injury or illness occurs at work) has dropped by more than 33% from 2019 to the present.  Likewise, Amazon observed meaningful reductions in musculoskeletal injuries at BFI4 and continues to invest in studying and understanding ergonomic risk.

### 2.     Amazon Has Fully Implemented Its Ergonomics Program at the BFI4 Fulfillment Center in Kent.

17.     BFI4 is an Amazon fulfillment center in Kent, Washington, in which Amazon associates process orders that contain items weighing less than 50 pounds and are assisted by robotic conveyance.  BFI4 covers roughly 1.1 million square feet and employs an average of 2,850 people during non-holiday months, increasing to an average of 3,300 from October to December.

18.     Amazon employs approximately 19 health and safety professionals at BFI4, including a workplace health and safety manager, workplace health and safety specialists, onsite medical representatives, and injury prevention specialists.  The workplace health and safety manager oversees safety throughout BFI4, but all of the health and safety professionals at BFI4 are responsible for implementing, enforcing, and improving Amazon's safety program at the facility.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

19.     BFI4 also has a dedicated ergonomics leadership team, comprised of health and safety professionals and operations managers.  The team's mission is to identify and manage ergonomic risk.  They are supported in this mission by the corporate Human Factors and Ergonomics team, which includes more than a dozen specialized ergonomics professionals.  This team is responsible for developing programs to eliminate and reduce musculoskeletal disorder risks for facilities in North America.  The Human Factors and Ergonomics Team also provides program assistance and subject matter expertise to ergonomics leadership teams at North America facilities, including BFI4.

20.     BFI4's three injury prevention specialists, all certified athletic trainers, conduct site-specific ergonomic assessments to evaluate every process path in the facility and review and refresh these assessments annually.  The results of these assessments determine what injury prevention efforts are prioritized by BFI4's ergonomics leadership team.  Safety staff at BFI4 also monitor weekly injury reports and review trends monthly, and if they identify patterns indicating ergonomic risks in specific process paths, the site prioritizes those paths for individual assessment and associate coaching.

21.     Consistent with Amazon's commitment to the National Institute of Occupational Safety and Health's hierarchy of safety controls, BFI4 uses engineering controls to design out risk where possible.  For example, BFI4 has implemented Destuff-IT and Restuff-IT conveyors, which are telescoping conveyors with height-adjustable work platforms that extend through the length of a trailer.  These telescoping conveyors allow associates to extend and modify the height of the conveyor platform to eliminate the need for awkward reaching or bending when loading or unloading trailers.

22.     Other examples of engineering controls at BFI4 include lowering of conveyors used by associates in "pack singles" work areas to reduce potential shoulder stresses when reaching for totes, redesigning the ladder railings at workstations in the "stow" work area to improve posture, and adding a small platform at workstations in the "AFE pack" areas to reduce the potential for awkward reaches in higher shelves.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

23.     BFI4 implements administrative controls required by Amazon's ergonomics policy as well.  BFI4 trains associates extensively on good body mechanics, including through the "Safety School" training for new hires, daily reinforcement teachings from BFI4's injury prevention specialists, and implementation of the WorkingWell Program where associates regularly receive wellness information.

24.     Finally, all associates at BFI4 are encouraged to work comfortably and safely. Associates who violate a safety rule are subject to Amazon's progressive disciplinary policy. By contrast, only certain associates within the facility are subject to performance reviews that include productivity considerations.  And within that group, only associates whose productivity falls below the fifth percentile are potentially subject to counseling and training that is designed to help them improve their performance.

**B.     The Statutory Scheme.**

**1.     WISHA's Statutory Scheme Denies Employers a Meaningful Opportunity to Obtain a Stay of an Abatement Order.**

25.     WISHA authorizes the Department to issue citations and order abatement of alleged workplace safety violations.  Under WISHA and its implementing regulations, the Department classifies violations as "general," "serious," "willful," "repeat," or "failure to abate," depending on the level of potential harm they pose to workers.  WAC 296-900-14010. For violations classified as anything other than "general" or "repeat general," the Department requires immediate abatement unless the employer appeals the citation to the Board of Industrial Insurance Appeals and obtains a stay of the abatement requirement pending decision on the appeal of the underlying citation.  RCW 49.17.140(5).  WISHA requires the Board to consider the employer's request to stay abatement on an expedited schedule separate from its eventual consideration of the appeal of the citation.  RCW 49.17.140(5)(c).

26.     Under this expedited schedule, an employer has only 14 days to compile and submit any supporting materials for the Board to consider when ruling on the request to stay abatement.  WAC 263-12-059(3)(c)(i).  The Department and any affected employees have until

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

a Board-imposed deadline (no longer than 28 days from the date of the notice of appeal) to file materials in opposition.  WAC 263-12-059(3)(c)(ii).  The Board has authority to grant continuances for good cause, but only so long as it is able to render a decision within 45 days of the Board's receipt of the appeal.

27.     In ruling on the stay request, the Board considers only evidence that goes to whether the employer has shown good cause to stay abatement and whether "it is more likely than not that a stay would result in death or serious physical harm to a worker."  RCW 49.17.140(5)(e).  Under this scheme, an employer bears the burden of proving that abatement is unnecessary before the Department has even proven that any violation exists.

28.     Neither the statutory nor regulatory scheme contemplates reply briefs, and oral argument on the stay request is not permitted.  WAC 263-12-059(5).  Nor do the rules allow employers to subpoena documents, conduct depositions, or cross-examine witnesses when seeking a stay of abatement.  Expert testimony is critical in any case involving an applied science like ergonomics, as the Department demonstrates by relying heavily on expert testimony in its opposition to Amazon's stay request.  Washington's default 14-day period in which to submit stay materials deprives employers of a meaningful opportunity to develop and present expert testimony in support of a stay or to refute Department experts.  In contrast, the Department has six months to conduct an inspection, gather evidence, work with experts, and issue a citation.

29.     Additional procedural constraints further hamper an employer's ability to obtain a stay of abatement pending the outcome of a hearing on the merits of the underlying citation. Under Board regulation WAC 263-12-059(4), the Board "will deny" a request for a stay of abatement if, among other things, the employer does not request the stay in its notice of appeal, "fails to include union information" in its notice of appeal (even if the employer's workforce is not represented by any union), or "fails to timely file a certification that its employees have been notified about the appeal and the request for stay of abatement[.]"  The Board will not grant a stay, even if it is warranted, if the employer trips over any of these technicalities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

30.     If the Board denies an employer's request for stay of abatement, the employer has no ability to appeal the Board's denial to the state's superior courts or anywhere else.

**2.     WISHA's Abatement Procedures Require Employers to Abate Before the Department Has Satisfied Its Burden of Proof.**

31.     If the Board denies a stay of abatement request, an employer is required to abate alleged violations even before the Department has proven a violation exists.  If an employer chooses not to comply with the abatement requirement, the Department can assess significant financial penalties, which can be as high as $7,000 per day, per violation.  *See* RCW 49.17.180(2)-(4).

32.     In addition to requiring employees to correct alleged violations, WISHA's abatement procedures force employers to make admissions under oath, even when an employer disputes the citation.  Specifically, the Department will not consider an employer to have abated an alleged violation until the employer completes the "Employer Certification of Abatement Form."  This form compels the employer to admit under oath, subject to criminal penalties, that the alleged violation *is* a "hazard" and that the employer "corrected the hazard."  Thus, before the Board determines a violation actually exists, employers must admit the Department's allegations under oath or face penalties for failing to abate the alleged violation.

33.     Furthermore, in cases involving alleged violations of the General Duty Clause, as in this case, WISHA's abatement procedures eliminate the Department's burden of proof on an essential element of a General Duty Clause violation and require the employer to relinquish a potential merits defense.  Specifically, to establish a General Duty Clause violation, the Department is required to prove that feasible means exist to eliminate the hazard or materially reduce it.  Forcing an employer to identify feasible means of abatement and certify that it has "corrected the hazard" before the Department satisfies its burden of proof relieves the Department of its burden and essentially forecloses the employer's opportunity to argue in the actual hearing on the merits that no feasible means of abatement exist.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

34.     The Department is also authorized to inspect other facilities operated by the employer during the pendency of an appeal.  Regardless of whether a previous citation remains under appeal, the Department takes the position that it can cite the employer for the same violations at those other facilities and use the previously issued, unproven, and appealed citations as evidence of willfulness.  This means that previously issued but appealed citations can become the basis for stiffer penalties (possibly increased by a factor of 10) and additional compliance costs, even though the Department has not yet proven the alleged initial violation. *See* WAC 296-900-14015.

35.     Paradoxically, WISHA's stay of abatement procedures provide less protection against error than the stay and appeal procedures available to employers for true emergencies. In situations where the Department believes a "violation is such that a danger exists from which there is substantial probability that death or serious physical harm could result to an employee," the Department "may issue an order immediately restraining any such condition, practice, method, process, or means in the workplace."  RCW 49.17.130.  Should that occur, an employer may petition the Superior Court for review and relief.  In addition, the Department may petition the Superior Court to enjoin the alleged condition or practice.  RCW 49.17.170. Such court review of Department orders is not available to an employer that is denied a stay of abatement.

**C.      The Department Cites Amazon and Requires Immediate Abatement of Alleged Ergonomics Hazards.**

36.     The Department began its investigation of Amazon facilities with inspections of Amazon's fulfillment centers at DuPont and Sumner.  The Department issued two citations to DuPont and one citation to Sumner for alleged violations of the General Duty Standard, based on alleged ergonomic risks.  Amazon appealed those citations, and those appeals remain pending.  Despite those appeals, the Department initiated its investigation of BFI4 for the same alleged violations.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

37.     Department inspectors visited BFI4 three times during their investigation:  one day in September 2021, one day in December 2021, and one day in January 2022.  The first visit was a walk-around to organize the Department's inspection.  Over the course of the other two days, inspectors conducted surveys and observed associates, but they did not interview BFI4's workplace health and safety managers or specialists, onsite medical representatives, injury prevention specialists, or any other member of BFI4's 19-person health and safety team.

38.     The Department's investigation culminated in the issuance of a Citation and Notice of Inspection on March 9, 2022.[1]  The Citation alleges that Amazon committed 11 "serious willful" violations the General Duty Clause, assessed a $60,000 fine, and gave Amazon 60 days to develop and implement its own abatement plan or immediately implement the Department's abatement recommendations.

39.     The Department justifies its "serious willful" classification by asserting that Amazon has been aware of the alleged ergonomic violations because the Department cited Amazon for similar violations at its DuPont and Sumner fulfillment centers, even though BFI4 is a distinct facility, Amazon challenged the merits of those prior citations, and Amazon's challenges are still awaiting a hearing.

**D.      The Citation Irreparably Harms Amazon.**

40.     In the Citation, the Department provided a list of "Feasible Methods of Abatement."  These abatement measures closely mirror and in some cases copy verbatim the abatement measures the Department specified in the citations it issued to Amazon's DuPont and Sumner fulfillment centers.  And in the absence of any specific ergonomic standard under Washington law, the Citation also failed to identify an objective ergonomic standard by which Amazon can measure whether it has complied with the abatement mandates.

41.     The costs of abating alleged hazards that Amazon disputes and that the Department has not yet proven are substantial.  As a threshold matter, there is no clear ergonomic standard or risk level against which to measure "abatement," meaning employers

---

[1] All subsequent dates are to 2022 unless otherwise specified.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

have no ascertainable certainty about what the Department will deem satisfactory beyond the abatement measures the Department proposes in a citation. That lack of clarity affords the Department near limitless discretion to interfere in the details of company operations, all in the name of reducing unsubstantiated alleged hazards.

42.     In the citation for BFI4, the Department has proposed that Amazon implement changes in controls for ten different job paths, and for each of those, the Department is effectively directing Amazon to purchase and install a suite of specialized equipment, including telescoping conveyers, vacuum lifts, powered cart tuggers, electric pallet jacks, and height-adjustable platforms. The costs of implementing these changes for all ten job tasks throughout a 1.1 million square foot facility will easily be in the millions of dollars, but it will also be tremendously disruptive to Amazon's operations, requiring a comprehensive redesign of BFI4 and installation, training, and plans to address new health and safety risks associated with the operation of new and large, powered industrial equipment. Moreover, by forcing Amazon to make the Hobson's choice between abating unproven harms with unproven technologies or facing fines for refusing to abate, the Department's action will harm Amazon's good will and reputation with its customers, the public, and Amazon associates.

43.     The Department, on the other hand, has not shown that allowing Amazon's appeal of the citation to be decided first, before requiring abatement, will endanger associates at BFI4. Even if the changes the Department has proposed were feasible (and Amazon does not concede that they are), the Department has presented no evidence that they will materially reduce ergonomic risk or have any effect whatsoever on ergonomic injury rates. Amazon's comprehensive workplace safety and ergonomics program has reduced musculoskeletal injuries at BFI4 and will continue to identify, address, and design out specific risks to protect associates during the pendency of Amazon's appeal. Requiring significant and untested abatement measures is unnecessary and potentially counterproductive before the Board determines, after a full hearing and consideration of all of the evidence, whether the Department can satisfy its burden to prove any violation and what, if any, violation must be remedied.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

**E.      Amazon Appeals and Requests a Stay of Abatement, but the Board Denies It without Considering the Merits.**

44.      Amazon timely appealed the Citation and request for stay of abatement on March 31, 2022.  Amazon received the Notice of Filing of Appeal on April 8, and the notice specified a deadline of April 18 for Amazon to provide evidence in support of its request to stay abatement.  The Board granted Amazon's motion to extend the deadline to May 2, which is when Amazon submitted its stay motion.  Even with this extension, Amazon had only 24 days to prepare its motion for stay.

45.      In preparing its submission in support of its request for a stay, Amazon had only the bare-bones citation and an incomplete copy of the Department's inspection file.  Amazon did not have all of the evidence and records the Department relied on in issuing its citation, nor did it have all of the data the Department's ergonomists used to conclude that Amazon employees were exposed to undue ergonomic hazards.  In fact, the Department did not provide all of its data to Amazon until *after* the Board denied Amazon's stay request.  Given the limited time available under the Board's procedural rules, Amazon also had no opportunity to compel discovery of the remainder of the administrative record or depose or cross-examine witnesses and present oral argument.  Instead, Amazon had to submit a separate public records request to obtain the data and records the Department relied on in issuing the Citation, and even then, the Department did not provide the complete inspection record until after Amazon submitted its stay motion.

46.      These defects are not mere inconveniences, as the Department's evidence in opposing Amazon's stay request included multiple expert declarations suggesting unsubstantiated causal links between Amazon's work practices, pace of work, and recorded injuries.  Only after careful examination of the Department's inspection records, only a portion of which Amazon received before its stay of abatement request was due (with the Department providing the balance well after the stay briefing was completed), did Amazon have the opportunity to discover that the Department's allegations were based on faulty and incomplete data and unreasoned risk calculations.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

47.     On May 27, the Board denied Amazon's request to stay abatement based on procedural technicalities in the Board's regulations that neither party had briefed.  Specifically, the Board denied the stay motion because Amazon allegedly had not notified the Board about unions representing workers affected by the appeal (notwithstanding that workers at BFI4 are not represented by a union) and did not certify that it had notified its associates of its intent to appeal the Citation.  Although the statute governing motions for a stay of abatement provides that the Board "shall grant" a stay of abatement unless the evidence indicates that "it is more likely than not that a stay would result in death or serious physical harm to worker," RCW 49.17.140(5)(e), the Board declined to even analyze the issue, instead avoiding it entirely based on the above technicalities.

48.     The Board sent its Order denying the stay request to the parties by U.S. mail.  Amazon received the Order on Friday, June 3, and immediately completed the certification of notice to associates, which it filed with the Board the following Monday, June 6.

49.     Counsel for Amazon also contacted counsel for the Department who stated that the Department did not object to the Board's deciding Amazon's stay request on the merits and would not oppose a motion for reconsideration.  Accordingly, Amazon moved for reconsideration of the Board's Order.

50.     The Board mailed its Order denying Amazon's motion for reconsideration on August 8, which Amazon received on August 11.  In the Order, the Board admitted that one of its bases for originally denying a stay – that Amazon allegedly failed to inform the Board that there were no unions involved – was "incorrect."  The Board nevertheless denied reconsideration because Amazon filed the certification late.  The Board's Order did not mention that Amazon's motion was unopposed, analyze the factors for reconsideration under Civil Rules 59 and 60 (which the Board's rules incorporate), or address any of Amazon's arguments about why its stay request should be decided on the merits.

51.     No mechanism exists under WISHA or its regulations for Amazon to appeal the Board's denial of the request for a stay of the abatement requirement.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

**F.      Amazon Must Invest Significant Resources and Disrupt Its Business Operations or Face Steep Financial Penalties Even Though the Department Has Not Yet Proven a Violation of Any Safety Standard.**

52.      A full hearing on the merits of Amazon's appeal of the underlying citation for alleged ergonomic hazards at BFI4 is not scheduled to conclude until February 2023 at the earliest.  In the meantime, the Department demands Amazon divert attention and resources from its own ongoing workplace safety efforts to conduct a costly study, refit and retool its BFI4 facility, and change certain operations to address unsubstantiated harms.  Amazon will thus incur significant costs to change conditions or practices that the Department has not proven constitute actual ergonomic hazards and to implement new Department-mandated practices that carry their own workplace safety risks.  Amazon also faces steep fines both for the Citation and for any non-compliance with the abatement requirement.  And if the Board eventually finds for Amazon on the merits of the underlying appeals, Amazon cannot recover the costs of complying with the Department's abatement requirements.  Amazon will also have suffered irreparable harm to its reputation, and it will have to incur additional costs to undo changes that the Department mandated improperly.  Again, what the Department seeks is nothing short of a fundamental redesign and retrofit of most aspects of a roughly 1.1 million square foot facility, with disruptions for employees and customers.  It demands these changes on the basis of general and unsubstantiated allegations and a vague risk standard that offers no clear barometer by which to measure risk, compliance, or risk reduction.  The Department's abatement requirement also fails to consider the reasonableness, cost, effectiveness, or potential for the required changes to create new risks for Amazon's associates.

53.      WISHA's stay of abatement regime forces employers to risk significant financial penalties or undertake expensive and disruptive measures to change conditions or practices the Department claims, but has not proven, violate workplace safety rules.  The available procedures provide no meaningful opportunity for an employer to develop or present evidence in support of a request to stay abatement requirements pending the outcome of an appeal of a citation, no opportunity to appeal a denial of a stay request, and no mechanism for

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

employers to recover the costs of unnecessary abatement for unfounded allegations.

## VI.    CLAIMS

**A.    First Claim (42 U.S.C. § 1983):  WISHA's Stay of Abatement Procedures Are Facially Unconstitutional Because They Violate the Fourteenth Amendment's Procedural Due Process Protections.**

54.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

55.    The Fourteenth Amendment to the United States Constitution provides that no state government shall "deprive any person of life, liberty, or property, without due process of law. . . ."  The Fourteenth Amendment applies to state administrative procedures.

56.    WISHA's requirement that employers face steep financial penalties or abate alleged ergonomic hazards before the state proves any violation, and the procedures available to employers to request a stay of abatement, violate the Fourteenth Amendment's guarantee of procedural due process.

**B.    Second Claim (42 U.S.C. § 1983):  WISHA's Stay of Abatement Procedures Violate the Fourteenth Amendment's Procedural Due Process Protections as Applied to Amazon in This Case.**

57.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

58.    WISHA's requirement that Amazon face significant financial penalties or abate alleged ergonomic hazards at BFI4 based on unproven violations of the General Duty Clause, and the procedures available to Amazon to request a stay of abatement, violate the Fourteenth Amendment's guarantee of procedural due process.

**C.    Third Claim (42 U.S.C. § 1983):  WISHA's Stay of Abatement Procedures Are Facially Unconstitutional Because They Violate Substantive Due Process Protections in the Fourteenth Amendment.**

59.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

60.    Substantive due process guards "against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

themselves constitutionally adequate." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994); *see also Yim v. City of Seattle*, 194 Wn.2d 682, 689 (2019).

61.     WISHA's requirement that employers abate alleged ergonomic hazards based on unproven violations of workplace safety rules or face significant financial penalties, and the procedures available to employers to request a stay of abatement, violate the Fourteenth Amendment's guarantee of substantive due process.

**D.     Fourth Claim (42 U.S.C. § 1983):  WISHA's Stay of Abatement Procedures Are Unconstitutional as Applied to Amazon in This Case Because They Violate Substantive Due Process Protections in the Fourteenth Amendment.**

62.     Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

63.     WISHA's requirement that Amazon face significant financial penalties or abate alleged ergonomic hazards at BFI4 based on unproven violations of the General Duty Clause, and the procedures available to Amazon to request a stay of abatement violate the Fourteenth Amendment's guarantee of substantive due process.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.     A declaratory judgment against Defendants that the stay of abatement procedures set out in RCW 49.17.140(4)-(6), the implementing rules and regulations, and Department practices violate the Fourteenth Amendment to the U.S. Constitution and are both facially unconstitutional and unconstitutional as applied to Amazon in connection with Citation and Notice of Assessment for Inspection No. 317965723.

B.     Preliminary and permanent injunctive relief prohibiting enforcement of the challenged provisions and Department practices requiring abatement of alleged but unproven hazards.

C.     An award to Amazon for its attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988 and any other applicable law.

D.     Such other, further, and additional relief as the Court deems just and equitable.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    DATED this 3rd day of October, 2022.

2                                    DAVIS WRIGHT TREMAINE LLP
                                     *Attorneys for Plaintiff*
3

4                                    By */s/ Harry J. F. Korrell*
                                     Harry J. F. Korrell, WSBA #23173
5                                    920 Fifth Avenue, Suite 3300
                                     Seattle, WA  98104-1610
6                                    Telephone: 206.757.8080
                                     Fax: 206.757.7080
7                                    E-mail: harrykorrell@dwt.com

8                                    By */s/ Jeffrey B. Youmans*
                                     Jeffrey B. Youmans, WSBA #26604
9                                    920 Fifth Avenue, Suite 3300
                                     Seattle, WA  98104-1610
10                                   Telephone: 206.757.8179
                                     Fax: 206.757.7179
11                                   E-mail: jeffreyyoumans@dwt.com

12                                   By */s/ Joseph P. Hoag*
                                     Joseph P. Hoag, WSBA #41971
13                                   920 Fifth Avenue, Suite 3300
                                     Seattle, WA  98104-1610
14                                   Telephone: 206.757.8299
                                     Fax: 206.757.7299
15                                   E-mail: josephhoag@dwt.com

16                                   By */s/ John G. Hodges-Howell*
                                     John G. Hodges-Howell, WSBA #42151
17                                   920 Fifth Avenue, Suite 3300
                                     Seattle, WA  98104-1610
18                                   Telephone: 206.757.8255
                                     Fax: 206.757.7255
19                                   E-mail: jhodgeshowell@dwt.com

20

21

22

23

24

25

26

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18