THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM SERVICES LLC, | CASE NO. C22-1404-JCC |
| Plaintiff, | ORDER |
| v. | |
| JOEL SACKS, *et al.*, | |
| Defendants. | |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 10, 12).[1] Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' motion (Dkt. No. 10) and DENIES Plaintiff's motion (Dkt. No. 12) for the reasons explained herein.

I.     **BACKGROUND**

       A.     **Washington Industrial Safety and Health Act ("WISHA")**

The Washington Industrial Safety and Health Act ("WISHA") sets forth certain minimum workplace safety requirements. *See generally* RCW 49.17. At issue in this case is the constitutionality of certain pre-deprivation WISHA processes to support worker safety which are

---

[1] Defendants captioned their motion as one seeking dismissal pursuant to Rule 12(b). (Dkt. No. 10.) But they rely on evidence outside the record. (*See, e.g.*, Dkt. No. 11.) Accordingly, the Court recasts it as one seeking summary judgment. *See, e.g.*, *Wright v. Allstate Fire & Cas. Ins. Co.*, 2021 WL 5761620, slip op. at 4 n.3 (W.D. Wash. 2021).

levied against employers. (*See generally* Dkt. No. 1.)

Defendant Washington Department of Labor and Industries ("L&I") investigates potential workplace safety concerns and issues citations to employers for alleged violations of relevant safety standards. *See generally* RCW 49.17. L&I may issue an order of immediate restraint if it determines an unsafe condition presents a substantial probability that death or serious physical harm could result. RCW 49.17.130. If the investigation reveals a potential violation that does not present an immediate danger, L&I will issue a citation describing with particularity the nature of the violation, with reference to the provisions of the statute allegedly violated. RCW 49.17.120(1). The citation must provide a reasonable time to abate the hazard and inform the employer that it has fifteen working days to notify L&I if it intends to appeal. RCW 49.17.140(1). If a violation is classified as "serious" or "willful," though, a notice of appeal does not automatically stay abatement dates or requirements. RCW 49.17.140(5). However, an employer may request a stay of abatement in its notice of appeal. RCW 49.17.140(5)(a).

When an employer appeals a citation, L&I either maintains jurisdiction over the matter or passes it to the Board of Industrial Insurance Appeals ("BIIA"). *See* RCW 49.17.140(4). The BIIA is an independent agency that hears appeals of L&I decisions regarding WISHA safety citations. WAC 263-12-015(1); WAC 263-12-010(3). The BIIA must stay abatement for a "serious, willful" violation "unless based on the preliminary evidence it is more likely than not that a stay would result in death or serious physical harm to a worker." RCW 49.17.140(5)(e). In its request for a stay, the employer must include, among other requirements, proof that it has provided notice to its employees of the appeal. WAC 263-12-059. A request for a stay of abatement pending appeal will be denied, though, if the employer fails to certify that it has notified its employees of the appeal. WAC 263-12-059(4)(c).

B. **Procedural History**

The specific facts here are largely undisputed. Plaintiff's fulfillment center in Kent, Washington is a large warehouse employing approximately 2,600 workers during non–holiday

months. (Dkt. No. 14 at 2.) Industrial equipment, robotic devices, and computer software all help automate operations to assist employees to prepare packages for shipment. (*Id.*) In August 2021, L&I received a worker complaint about this facility. (Dkt. No. 11-8 at 2.) L&I conducted an initial walk-through and identified a number of safety risks requiring further analysis. (*Id.* at 2–3.) During a subsequent inspection, L&I performed a full review of Plaintiff's ergonomics program. (*Id.*) And, as a result, L&I assessed a $60,000 penalty for multiple "Willful Serious" WISHA violations. (Dkt. No. 11-3 at 2–3.) In the citation, L&I directed Plaintiff to submit a written plan of abatement. (*Id.* at 5.)

Plaintiff appealed the citation, and requested a stay of abatement pending resolution of the appeal. (Dkt. No. 11-12.) L&I declined jurisdiction, forwarding Plaintiff's appeal and stay request to BIIA and the Office of the Attorney General. (Dkt. Nos. 11-12 at 2, 13-1 at 74.) BIIA then instructed Plaintiff to support its stay request with evidence; certify whether any impacted employees were union–represented; and certify that it provided employees with copies of the L&I decision, the notice of appeal, and a notice that the employees could participate in the appeal. (Dkt. No. 13-1 at 74.) Plaintiff filed a notice of appeal and requested a stay of abatement, but failed to certify that it had notified its employees of the stay request. (Dkt. No. 13-1 at 53–54.)

On May 27, 2022, BIIA denied Plaintiff's stay of abatement request on the grounds that it failed to file the requisite certification of notice to employees. (Dkt. Nos. 11-19, 13-1 at 290.) Plaintiff subsequently filed the certification, verifying that, on June 6, 2022, it notified employees of the appeal and their right to participate. (Dkt. No. 13-1 at 293.) Plaintiff then asked BIIA to reconsider the denial of the stay request, arguing that the denial was based on technicalities that had since been rectified. (Dkt. Nos. 11-20, 13-1 at 295–304.) On reconsideration, BIIA again denied Plaintiff's request for a stay because Plaintiff's late posting of its notice of appeal did not "rectify the deficiency present at the time [the appeal and request] was filed." (Dkt. Nos. 11-22, 13-1 at 313.)

Shortly thereafter, Plaintiff filed suit in this Court, asking for a declaratory judgment that WISHA's stay of abatement procedures deprived it of Due Process. (*See generally* Dkt. No. 1.) The parties now cross-move for summary judgment. (Dkt. Nos. 10, 12.) Defendants, in their motion, argue that Plaintiff lacks standing and, regardless, the stay of abatement procedures comport with Due Process.[2] (Dkt. No. 10.) Plaintiff contends otherwise, arguing that WISHA's processes present procedural and substantive due process violations, both facially and as applied. (Dkt. No. 12.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is proper if, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Here, the facts are largely undisputed.

### B. Procedural Due Process – Facial Challenge

States are prohibited from depriving any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV. To determine whether a state's given act or procedure violates Due Process, the Court must balance three factors:

> [1] the private interest that will be affected by the official action; [2] the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the [state's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due Process is flexible—necessary protections may depend on what the situation demands. *Id.* at 334. To facially challenge a state's legislative act allegedly violating Due Process, "the challenger must establish that no set of circumstances

---

[2] Because, for the reasons stated below, the Court finds no Due Process violations, it declines to reach Defendants' standing argument.

exist under which the act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (cleaned up).[3] Said another way, the Court must determine whether, in every instance, the act violates Due Process, based on the factors noted above.

1. Private Interest

The Court must first consider the nature of the private interest impacted. Defendants argue it is limited and nominal, given that the WISHA violations here resulted solely in fines, meaning, they are "merely financial." (Dkt. No. 10 at 15–16) (citing cases). But "[m]oney constitutes a property interest." *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1083 (E.D. Cal. 2008). And, as Plaintiff points out, the abatement costs here could be in the "tens of millions." (Dkt. No. 28 at 15.) Even the fines are "substantial." (*Id.*) And this is not unique to Plaintiff. (*See, e.g.*, *Id.* at 14.)

Defendants argue that, because there are *some* instances where abatement will involve little to no costs or operational disruption, Plaintiff fails to support a facial challenge, *i.e.*, one where a deprivation occurs in all settings. (Dkt. No. 19 at 11.) The logic of this argument is flawed. An employer who has no abatement cost is unlikely to apply for a stay. Therefore, the stay procedures would never apply, and these applications are, therefore, irrelevant. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Presumably, employers will only request a stay when it would be costly not to do so. And, therefore, in each instance, the private interest affected would be significant. Accordingly, the Court concludes Plaintiff has shown that employers have a significant private interest, which is impacted by L&I's procedures.

---

[3] Plaintiff argues that a facial challenge may attack "[a] subset of [analogous] applications." (Dkt. No. 12 at 17). While this may be true in some instances, it is not true here. Plaintiff's cited case, *Mwimanzi v. Wilson*, 590 F. Supp. 3d 231, 246 (D.D.C. 2022), relies on *Americans for Prosperity Foundation v. Bonta*, which recognized a facial challenge to a "*substantial* number of applications judged in relation to the entire statute's plainly legitimate sweep'." 141 S. Ct. 2373, 2387 (2021) (cleaned up). Whereas Plaintiff's claims are based on only four WISHA violations at three facilities, the basis of each is a small subset of WISHA's requirements. (Dkt. No. 12 at 17.) This is not the type of "substantial number of applications" warranting a facial attack.

2. Risk of Erroneous Deprivation

The Court next considers the risk of erroneous deprivation and the probable value of additional or substitute procedural safeguards.

Plaintiff makes a number of arguments, none of which the Court finds persuasive. Plaintiff first argues that the risk of erroneous deprivation is high because WISHA's procedures do not provide employers with a reasonable opportunity to present evidence and rebut L&I's evidence. (Dkt. No. 12 at 19.) This is because there is no compulsory discovery process. (*Id.* at 20.) But as Defendants note, employers may receive records through the Public Records Act. (Dkt. No. 19 at 19) (citing RCW 42.56). And such production requests, when necessary for appeal, are expedited. (Dkt. No. 27-2 at 2.) Plaintiff next argues that the short timeframe the BIIA has to make a decision (forty-five days) is insufficient for an employer to prepare an adequate stay request. (Dkt. No. 12 at 20.) But this does not automatically imply an improper process. *See California ex rel Lockyer v. FERC*, 329 F.3d 700, 710–11 (9th Cir. 2003). The operative question is whether an employer has sufficient notice and opportunity to be heard, which varies based on the nature of the case.[4] *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 717 (9th Cir. 2011). Finally, Plaintiff argues that WISHA's requirement for employers to complete an Employer Certification of Abatement form improperly compels employers to admit to unproven violations. (Dkt. No. 12 at 21–22) (citing WAC 296-900-150; 296-900-15005). But the certification *cannot* be used to prove a violation. *See* WAC 263-12-15(4); Wash. R. Evid. 407.

Plaintiff compares this case to *Tennessee Valley Authority v. Whitman*, 336 F.3d 1236 (11th Cir. 2003). (*See* Dkt. No. 12 at 19–20.) But the cases are distinguishable. There, the Court

---

[4] WISHA provides a process, albeit an expedited one, for employers to request a stay of abatement. Therefore, determining whether sufficient notice and opportunity to be heard may be more appropriately considered in an as applied challenge that takes into consideration the nature and specific facts of the case. Plaintiff also brings an as applied challenge, which the Court considers below.

found a statutory scheme unconstitutional where a single individual, the EPA head, could impose severe penalties "on the basis of *any* information available" without an opportunity to be heard. *Tennessee Valley*, 336 F.3d at 1258–59 (emphasis added). Moreover, there, many of the reasons for the regulator's findings were not divulged until *after* the hearing. *Id.* at 1246. Whereas here, under WISHA, the employer is provided a citation stating, with specificity, the violations alleged, and afforded an opportunity to challenge them and apply for a stay. RCW 49.17.120(1). An employer such as Plaintiff is not denied a stay because of the inadequacy of process available, but for failing to comply with the procedural requirements necessary to obtain a stay. These are meaningful distinctions.

For the reasons described above the Court finds that, although expedited, L&I's procedures properly provide employers with sufficient notice and opportunity to be heard,[5] especially when weighed against the state's interests, as explained below.

3. State's Interest

Finally, the Court considers the state's interest in supporting workplace safety. Defendants argue that WISHA's purpose is to ensure "as may reasonably be possible, safe and healthful working conditions" for Washington workers. (Dkt. No. 10 at 19) (quoting RCW 49.17.010); *see also* WASH. CONST. art. II, § 35 ("The legislature shall pass necessary laws for the protection of persons working in . . . employments dangerous to life or deleterious to health). As a result, L&I's citation process and stay of abatement procedures are designed to ensure any potential serious safety hazards are quickly addressed. Generally, the presumption is that the BIAA *shall* grant a stay, unless "preliminary evidence shows it is more likely than not that a stay would result in death or serious physical harm to a worker" or the employer fails to comply with

---

[5] The parties also dispute whether *post*-deprivation remedies, such as equitable tolling or *writs of certiorari* to the superior court, are available as additional safeguards. (*Compare* Dkt. No. 10 at 18, *with* Dkt. No. 28 at 18–19.) While such remedies, to the extent they are available may help provide a backstop, they are unnecessary where the *pre*-deprivation process comports with Due Process. Therefore, the Court need not consider the adequacy of these protections here.

the various procedural requirements. RCW 49.17.140(5)(e).

The expedited timeline required for review of stay of abatement requests ensures serious safety hazards are quickly addressed. RCW 49.170.140(5)(c). And the employee notice requirement importantly provides employees the opportunity to timely participate in the conversation without delaying the process. RCW 49.170.140(5)(d). Essentially, the process proceeds as follows: Once L&I identifies a potential serious or willful violation, it issues a citation and requires abatement of the violation. RCW 49.17.120. If the employer disputes the violation, there is an expedited process for the employer to apply for a stay of abatement. RCW 49.17.140(5)(c). As long as the employer can show by preliminary evidence that it is not more likely than not that a stay would result in a death or serious physical harm to a worker, a stay is granted. RCW 49.17.140(5)(e). This process gives employers an opportunity to stay any required abatement until the case is heard on the merits, as long as there is not a risk that such a stay will potentially create harmful situations for workers. The notice requirement is not a technicality; it ensures those affected most, employees, have the opportunity to be heard. And it is built into the expedited process to ensure worker safety is accomplished and is not a drawn out process. *See United States v. Rohm & Haas, Co.*, 669 F. Supp. 672, 680 (N.J.D.C. 1987). Prompt action may be necessary.[6]

Plaintiff argues that Defendants' own statements, including its statement that Plaintiff may have over a year to abate, proves the alleged urgency of a workplace safety situation is overblown. (Dkt. No. 29 at 14) (citing Dkt. No. 19 at 7). But this assumes an employer has already agreed to abate. Defendants are not saying they will wait a year to decide whether abatement is required; rather they are acknowledging that once an employer agrees to abatement,

---

[6] Plaintiff also argues that such protections are unnecessary, as RCW 49.170.130 already provides an emergency procedure for immediate threat of injury. (Dkt. No. 12 at 22–23.) But that section allows L&I to issue an order of immediate restraint where there is a substantial probability that death or serious physical harm will occur. *See* RCW 49.170.130. There may be situations where *immediate* restraint is not necessary, but that serious violations still require prompt action.

ORDER
C22-1404-JCC
PAGE - 8

implementing such changes may take time.

Although the stay of abatement procedures are expedited and do not provide the protections that a full hearing would, they are warranted when balanced against the strong state interest in protecting worker safety and avoiding serious harm to employees. Accordingly, the Court concludes the stay of abatement procedures do not facially violate Due Process.

C.    **Procedural Due Process – As Applied**

Plaintiff also argues that the stay of abatement procedures violate Due Process, as applied to this case. (Dkt. No. 12 at 24–28.) As described above, Plaintiff does show that its protected interests are affected by the procedures here. Plaintiff also argues that this case is highly fact-specific, which creates a great risk of administrative error. (Dkt. No. 12 at 21.) It argues this deprived it of a meaningful opportunity to present its case given the expedited nature of the proceedings. (*Id.*) However, it does not show that the procedures, as applied here, were improper.

Plaintiff argues, for example, that it would have prevailed on its stay request "had the Board considered [the request] on its merits." (Dkt. No. 12 at 26.) But that is a problem of Plaintiff's own making. Plaintiff's request for a stay was not denied because of the complexity of the case or because it did not have time to develop a factual record. It was denied because it failed to follow the proper procedures. (Dkt. No. 13-1 at 313–14.)

Nor is the employee notice requirement simply a "technicality," as Plaintiff suggests. (Dkt. No. 12 at 15.) It ensures affected employees are afforded the opportunity to participate in the process. It was only because of Plaintiff's failure to comply with this requirement that BIIA denied the stay. Accordingly, there was no Due Process violation, as applied here.

D.    **Substantive Due Process**

Plaintiff also argues that the regime described above violates substantive due process.[7] (Dkt. No. 12 at 28–29.) But, because there is no fundamental right at issue, there only needs to

---

[7] Plaintiff does not indicate whether its substantive due process challenge is facial or as applied. But its arguments fail under either standard.

be a rational relationship to a legitimate state interest. *Jackson Water Works, Inc. v. Pub. Util. Comm'n of Cal.*, 793 F.2d 1090, 1093-94 (9th Cir. 1986). This is a deferential standard requiring Plaintiff to show the state's actions are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012).

Plaintiff argues that the current procedures unfairly and arbitrarily shift the legal burden to employers to prove innocence or be forced to abate unproven hazards. (Dkt. No. 12 at 29.) But simply putting the burden of proof on that party does not necessarily violate Due Process. *Lavine v. Milne*, 424 U.S. 577, 585 (1976); *Wilcox v. Comm'r*, 848 F.2d 1007, 1008 (9th Cir. 1988).

Plaintiff next argues that other jurisdictions have greater protections for employers and that there are other alternatives available for urgent safety concerns. (Dkt. No. 28 at 31.) But the availability of other options does not inherently make a given process unconstitutional, absent the application of a higher standard, such as strict scrutiny. *See Reno v. Flores*, 507 U.S. 292, 302 (1993) (requiring government infringement on a fundamental liberty interest to be narrowly tailored to serve a compelling state interest).

Because there is a clear rational basis in protecting worker safety, Plaintiff's substantive due process challenge must fail.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 10) is GRANTED and Plaintiff's motion for summary judgment (Dkt. No. 12) is DENIED. Plaintiff's complaint is DISMISSED with prejudice.

DATED this 14th day of March 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE